IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **COLLEEN APPLETON, d/b/a** | : | |
| **IDE, Inc.,** | : | |
| | : | |
|     **Plaintiff** | : | |
| | : | |
|       v. | : | 5:03-CV-294 (WDO) |
| | : | |
| **INTERGRAPH SOLUTIONS** | : | |
| **GROUP, et al.,** | : | |
| | : | |
|     **Defendants** | : | |

**ORDER**

Plaintiff Colleen Appleton brought this suit alleging Georgia Trade Secrets Act violations. Defendants filed a counterclaim alleging that Plaintiff made slanderous statements to other individuals related to the claims asserted in this case. Defendants thereafter filed a motion for summary judgment on all of the Plaintiff's claims. After holding several hearings and thoroughly reviewing the record, the Court enters the following order.

***Factual and Procedural Background***

From June 2000 until January 2002, Plaintiff Colleen Appleton worked with Defendant Intergraph as a contract employee on one of the teams that developed and managed technology systems for Robins Air Force Base. Upon her departure, she incorporated IDE, Inc. In her Complaint, Plaintiff stated that her company has extensive experience in developing and working with integrated digital environments for the military. However, Plaintiff testified in her deposition

that her company has never had any clients or employees and her experience with the military has been limited to her work in graphic design while working with Defendant Intergraph for 18 months. Plaintiff has no formal training in computer programming and her experience has been limited to graphic design and web site construction.

After Plaintiff stopped working with the Defendants, she became aware of a Department of Defense directive regarding implementing various programs through digital technology when possible and to use as little paper documentation as possible. The implementation of this directive is referred to as Integrated Digital Environment or Integrated Data Environment (IDE).

Plaintiff contends that she developed a system whereby IDE and the old system, LEAN, could be utilized together in a way that would streamline the management functions of both large and small offices within the Department of Defense. Plaintiff claims that, prior to her effort, no one had been able to combine the two concepts successfully. Plaintiff also claims to have developed the idea to have central points of contact within the systems used by the military.

Plaintiff drafted a presentation of her ideas to present to U.S. Air Force personnel at Robins Air Logistics Center. After speaking with and emailing several individuals at Robins, Plaintiff set up a meeting to make her presentation to Jackie Cleghorn. Cleghorn later determined that he would need Anthony Adamson, an employee of Defendant Intergraph, at the presentation due to the technical nature of the information he expected the Plaintiff to present. Prior to that meeting, Plaintiff Appleton informed Cleghorn and Adamson that the information she would

present was proprietary and confidential. During the meeting, Plaintiff learned that Adamson was an employee of Intergraph and complained about his presence in the meeting. Cleghorn assured Plaintiff that Adamson was representing the government and that he was subject to the same non-disclosure rules as any other government employee.

Around this same time, Plaintiff was informed that she would have to team with a company that already had a contract with the installation or with a larger, more established company in order to qualify for a contract. Plaintiff then contacted someone she knew at Intergraph and set up a meeting to request them to sponsor her. During the meeting, Plaintiff had all participants sign a non-disclosure agreement regarding the information presented. Plaintiff contends that after the meeting, one of Intergraph's managers, Defendant Lewis Stewart, met with two individuals who had not been present at the meeting and allegedly revealed all the information Plaintiff had just presented in the meeting.

Plaintiff complained to Intergraph about this alleged disclosure. She contends that Intergraph did nothing about the disclosure but proceeded to present the information to the Air Force as its own material and ideas. Defendants contend that Intergraph investigated the complaint and concluded that there had been no breach of the non-disclosure agreement nor any misappropriation of any proprietary information.

After Plaintiff's presentations and a series of emails to numerous individuals, she requested $1,000,000 to furnish a complete, workable program in 12 months and $610,000 for the intellectual property rights associated with the

program.  Plaintiff was thereafter requested to submit a modified, more understandable statement of work because, according to the Defendants, she had presented an unworkable, nonfunctional program that could not be made functional without significant programming of which Plaintiff was incapable of performing.  Plaintiff responded that she could not alter the program without jeopardizing its purpose and integrity and asked that all of her documents be returned.  After she was unable to convince any government officials to award her the contract, or any portion thereof, she filed this case alleging that Intergraph misappropriated her proprietary information that had been presented during their meetings.

Plaintiff Appelton named Intergraph, Intergraph employees and federal government employees as defendants.  The United States was substituted as a party for the federal employees when it was determined that those employees were acting within the scope of their employment during the time in question.  The United States was thereafter dismissed by stipulation.

Defendants contend that the information that Plaintiff claims was misappropriated is not a trade secret as defined by Georgia law.  Defendants counterclaimed that Plaintiff made slanderous accusations against certain Intergraph employees when she complained to the Chamber of Commerce that Defendants had breached a confidentiality agreement and had interfered with Plaintiff's opportunity for employment with Robins.

### *Georgia Trade Secrets Act Claim*

Before any type of claim may be considered in a federal district court, that

court must have at least one of three types of jurisdiction over the claim(s): (1) jurisdiction under a specific statute; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332. Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). When there is a question of whether a court has jurisdiction over a particular claim or case, the court cannot ignore a possible jurisdictional defect; "rather a court, noticing the defect, must raise the matter on its own." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389, 118 S. Ct. 2047 (1998). The presence of a nondiverse party automatically destroys diversity jurisdiction. "No party need assert the defect. No party can waive the defect or consent to jurisdiction." Id.

   This Court does not have jurisdiction over Plaintiff's Georgia Trade Secrets Act claim because it is a state law claim and there is no basis for diversity or supplemental jurisdiction. See O.C.G.A. § 10-1-761(4). This Court does not have diversity jurisdiction over the claim because, although the amount in controversy would arguably be met, the parties are not of diverse citizenship. See 28 U.S.C. § 1332. That is, Plaintiff Appleton is a Georgia resident and the individual Intergraph employees are also Georgia residents. The Court will not sua sponte dismiss those individual defendants in order to cure the lack of diversity because those individuals are "indispensable" in that they are all subject to suit under the Georgia Trade Secrets Act and their acts or omissions are the bases for Plaintiff's claims. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 124 S. Ct. 1920 (2004). Finally, the Court does not have supplemental jurisdiction over this state claim because there is no other claim before the Court over which the Court

would have original jurisdiction.  See 28 U.S.C. § 1367.  Any claim asserted by Plaintiff pursuant to the Georgia Trade Secrets Act or any other state law is therefore DISMISSED WITHOUT PREJUDICE.

### *Counterclaim*

Defendants counterclaimed that Plaintiff made slanderous accusations against certain Intergraph employees when she complained to the Chamber of Commerce that Defendants had breached a confidentiality agreement and had interfered with Plaintiff's opportunity for employment.  Defendants contend these accusations imputed to the Defendants crimes punishable by law, made charges against them in reference to their trade and were calculated to injure them. Because the Counterclaim is also a state law claim over which this Court does not have jurisdiction, the same is DISMISSED WITHOUT PREJUDICE.

### *Other Claims*

In her responses to the motion for summary judgment and other pleadings, Plaintiff requested the Court to allow an amendment of her Complaint to allege a claim pursuant to the Federal Whistleblower's Act.  Plaintiff contends that Intergraph employees and several federal government employees violated Federal Acquisition Regulations regarding conflicts of interest in bidding and contract negotiations.

This Court does not have jurisdiction over any claim pursuant to that statute or the applicable regulations.  As of January 1, 2001, the Court of Federal Claims has had exclusive jurisdiction over that type of claim.  See PGBA, LLC v. U.S., 389 F.3d 1219, 1227 (C.A. Fed. 2004) (citing Emery Worldwide Airlines, Inc. v. United

States, 264 F.3d 1071 (C.A. Fed. 2001)).  Plaintiff's motion to amend her pleadings to assert this claim is denied.

### *Conclusion*

Plaintiff's claims and Defendants' counterclaim are dismissed for the reasons set forth above.  Accordingly, Defendants' motion for summary judgment and the requests for relief in Plaintiff's latest brief are DENIED AS MOOT.  Judgment shall be entered accordingly, with each party to bear their own costs and fees.

**SO ORDERED this 3rd day of May, 2005.**

_____
**WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**